**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 20-61287-CV-SMITH**
**MAGISTRATE JUDGE REID**

CARLOS RAMOS,

        Plaintiff,

v.

SHERIFF GREGORY TONY et al.,

        Defendants.

**REPORT OF MAGISTRATE JUDGE**

Plaintiff has filed a Complaint under 42 U.S.C. § 1983, [ECF Nos. 1, 5], which the Undersigned has screened under 28 U.S.C. § 1915A. As discussed below, the Complaint should be dismissed, without prejudice, for failure to state a claim.

**I.     Complaint's Allegations**

Plaintiff alleges that on May 18, 2020, he tested positive for COVID-19. [ECF No. 5 at 5]. He sues the following Defendants: (1) Sheriff Gregory Tony; (2) Broward County Jail; and (3) Ft. Lauderdale Police Department. [*Id.*] He seeks compensatory and punitive damages. [*Id.*]

Plaintiff alleges an outbreak of COVID-19 at the Joseph V. Conte Facility ("Facility"). *See* [*id.* at 2-3].[1] He apparently was housed there between March 31, 2020 and May 18, 2020. *See* [*id.* at 2, 5]. Plaintiff was "removed from the facility" after testing positive." [*Id.* at 5].

He alleges that: (1) various inmates in the Facility's B Tower tested positive for COVID-19; (2) various inmates in B Tower ran fevers; (3) inmates in B tower had been wearing the same

---

[1] All page citations to ECF entries refer to the page-stamp number at the top, right-hand corner of the page.

1

cotton masks for two weeks before April 20, 2020; (4) the Facility initially allocated only fifty "protected mask[s] for the entire B Tower which consist[s of] roughly 720 inmates at certain times"; (5) inmates were not "allowed to social[ly] distance themselves due to [a] 1:00 AM 'shakedown'" [on April 22  during which inmates in "B7" were gathered in the 24-foot by 30-foot recreational yard; and (6) "B8" inmates received new masks on April 22 that "appear[ed] to be less effective than the first ones the inmates received on 4.9.2020" because they were smaller with straps that broke easily. [*Id.* at 2-4].

He further alleges that, as of April 24, 2020, no inmate at the Facility had been tested for COVID-19. [*Id.* at 4]. In an apparent inconsistency, however, he alleges that an inmate in B Tower tested positive for the same in early April. [*Id.* at 2]. Furthermore, he alleges that inmates received COVID-19 tests after April 24. [*Id.* at 4-5]. Additionally, he alleges that a nurse had screened inmates for COVID-19 before April 24. [*Id.* at 4].

He asserts nominal claims for "cruel and unusual punishment," "emotional distress," "fear and apprehension," and "injury aggravating existing injury," [ECF No. 1 at 2], allegedly arising under the Fourth, Eighth, and Fourteenth Amendments, [ECF No. 5 at 1].

## II.    Legal Standard Under 28 U.S.C. § 1915A

Because Plaintiff is a prisoner who has filed a complaint against governmental entities and/or their employees, the court "[is] required to screen his complaint under § 1915A." *Thompson v. Hicks*, 213 F. App'x 939, 942 (11th Cir. 2007) (per curiam).

"Under § 1915A, the district court is required to . . . dismiss the complaint if it (1) is frivolous, malicious, or fails to state a claim upon which relief can be granted or (2) seeks monetary relief from an immune defendant." *Id.* The same standards govern dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and dismissal for failure to state a claim under § 1915A.

*Compare Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997), *with Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001). Thus, the Court may dismiss a complaint that fails "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III.    Discussion

A.    Eighth and Fourteenth Amendments

1.    *Individual Capacity*

Plaintiff's allegations impel the inference that he is a pretrial detainee. "Where, as here, the plaintiff is a pretrial detainee . . . , the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment's prohibition against cruel and unusual punishment, governs [the] analysis." *Jacoby v. Mack*, 755 F. App'x 888, 896 (11th Cir. 2018) (per curiam) (citing *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 n.1 (11th Cir. 2013)). However, "'the standards under the Fourteenth Amendment are identical to those under the Eighth.'" *Id.* (quoting *Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007)).

"To prevail on a § 1983 claim alleging unconstitutional conditions of confinement, a plaintiff must show a condition of confinement that inflicted unnecessary pain or suffering, the defendant's deliberate indifference to the condition, and causation." *White v. Cochran*, No. 16-17490-G, 2017 WL 6492004, at *3 (11th Cir. Nov. 27, 2017) (citing *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993)). Furthermore, § 1983 liability requires personal involvement of the defendant in the alleged constitutional violation. *See Iqbal*, 556 U.S. at 677 (under § 1983 "each Government official . . . is only liable for his or her own misconduct").

Here, Plaintiff has failed to state a cognizable § 1983 claim for deliberate indifference. Sheriff Tony is the only named Defendant that he potentially sues in his individual capacity and Plaintiff has not alleged that he had any involvement in the alleged deliberate indifference to his health and safety based on the COVID-19 outbreak. *See generally* [ECF No. 5].

Furthermore, while he names a couple of prison officials in his Complaint, his allegations do not support a reasonable inference that they were deliberately indifferent to his health or safety. For instance, the conclusory allegation that Deputy Alexandra had to leave the Facility to be tested for COVID-19 does not support such an inference. [ECF No. 5 at 2].

His allegations regarding Deputy Arnie are also insufficient. He alleges that Deputy Arnie advised inmates to tell their lawyers that the inmates had been wearing the same cotton masks for two weeks. [*Id.* at 3]. Further, he alleges that Deputy Arnie "mention[ed]" that the Facility initially only allocated fifty "protected mask[s]" for the "roughly 720 inmates" in B Tower "at certain times." [*Id.*] These conclusory allegations do not support a reasonable inference of deliberate indifference. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (emphasis added)). Absent more factual support, these isolated allegations are equally amenable to the inference that Deputy Arnie was trying to work with the inmates to find a solution to the alleged outbreak.

In short, Plaintiff has not alleged any facially plausible individual-capacity deliberate indifference claim against Sheriff Tony or nondefendants Deputies Alexandra and Arnie.[2]

---

[2] Although not essential to the analysis, the Undersigned notes that Plaintiff alleges that unspecified prison officials implemented several measures in response to the COVID-19 outbreak, such as screening inmates and staff for COVID-19, sanitizing cells, removing positive staff and inmates from the jail, and quarantining inmates. [ECF No. 5 at 2-5].

2.      *Official Capacity*

Plaintiff has not stated a cognizable official-capacity claim against Defendants Broward County Jail, Fort Lauderdale Police Department, or Sheriff Tony.

Preliminarily, any official-capacity claim against Sheriff Tony or the Broward County Jail must be treated as a claim against Broward County. *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (collecting cases); *Lannen v. Broward Cty. Sheriff's Office*, No. 10-61311-CIV, 2011 WL 13214322, at *2, *4 (S.D. Fla. Aug. 29, 2011). Similarly, the claim against the Fort Lauderdale Police Department must be treated as a claim against the City of Fort Lauderdale. *See Piccirillo v. City of Pembroke Pines*, No. 15-CV-62378, 2016 WL 1028333, at *3 (S.D. Fla. Mar. 15, 2016) (citing *Williams v. Miami-Dade Police Dep't*, 297 F. App'x 941, 945 (11th Cir. 2008)).

"A municipality may be held liable under § 1983 if the plaintiff shows that a 'custom' or 'policy' of the municipality was the 'moving force' behind the constitutional deprivation." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997) (quoting *Monell v. N.Y. City Dep't of Social Servs.*, 436 U.S. 658, 690-94 (1978)). "A plaintiff . . . has two methods by which to establish a county's policy: identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329-30 (11th Cir. 2003) (en banc). However, "an inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred." *See Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996).

Here, Plaintiff has not expressly pleaded the existence of any such policy or custom, and his allegations are not amendable to such an inference. *See generally* [ECF No. 5]. Furthermore, as discussed in Part III(A)(1), he has not adequately alleged an underlying constitutional

deprivation. Hence, any official-capacity claim against Broward County or Fort Lauderdale would not be cognizable.

B.     Remaining Claims

Plaintiff's nominal Fourth Amendment claim is not cognizable because his allegations do not implicate the same. *See generally* U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.").

One can liberally construe the complaint to allege state law tort claims. *See* [ECF No. 1 at 2; ECF No. 5 at 1]. However, because Plaintiff has failed to state a cognizable federal claim, there is no basis for supplemental jurisdiction over any state claim. *See* 28 U.S.C. § 1367(c) & (3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if [.] . . the district court has dismissed all claims over which it has original jurisdiction[.]"); *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997) (judicial economy, fairness, convenience, and comity dictate dismissal of state claims when court dismisses all federal claims before trial).

## IV.     Recommendation

As discussed above, Plaintiff's Complaint [ECF Nos. 1, 5] should be **DISMISSED**, without prejudice, under 28 U.S.C. § 1915(A)(1) for failure to state a claim. It is further recommended that this case **CLOSED** by the Clerk of Court.

Objections to this Report may be filed with the District Judge within fourteen days of receipt of a copy of this Report. Failure to file timely objections shall bar plaintiff from a *de novo*

determination by the District Judge of an issue covered in this Report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the District Judge except upon grounds of plain error or manifest injustice. *See* 28 U.S.C. § 636(b)(1); *see also Thomas v. Arn*, 474 U.S. 140, 149 (1985).

**SIGNED** this 9th day of October, 2020.

_____
UNITED STATES MAGISTRATE JUDGE

cc:     **Carlos Ramos**
        501803313
        Broward County Jail-NBB
        North Broward Bureau
        Inmate Mail/Parcels
        Post Office Box 407037
        Ft. Lauderdale, FL 33340
        *PRO SE*